UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN RE:<br><br>TIMOTHY DESHAWN GOODE<br>and<br>JESSICA YVETTE GOODE<br>　　　Debtors.<br><br>MATTHEW W. CHENEY,<br>Acting United States Trustee For Region 4,<br><br>　　　Movant,<br><br>v.<br><br>TIMOTHY DESHAWN GOODE<br>and<br>JESSICA YVETTE GOODE<br>　　　Respondents. | Chapter 7<br>Case Number 24-61142 |

## MOTION TO DISMISS CASE FOR ABUSE

Matthew W. Cheney, Acting United States Trustee for Region 4 (the "United States Trustee"),[1] by counsel, moves for the entry of an order dismissing the above-referenced Debtors' case pursuant to § 707(b)(1) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). In support of this motion, the United States Trustee respectfully states as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for this motion are §§ 105(a), 707(b)(1) and (b)(3) of the Bankruptcy Code.

---

[1] On January 10, 2025, Gerard R. Vetter resigned as acting United States Trustee and Matthew W. Cheney replaced him as the acting United States Trustee for Region 4. Pursuant to Rules 7025 and 9014(c) of the Federal Rules of Bankruptcy Procedure and Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Cheney is automatically substituted for Mr. Vetter as a party.

1

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. This motion is timely filed.

## BACKGROUND

5. The Debtors are individuals who filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 15, 2024. The petition indicates that the Debtors' debts are primarily consumer debts and that the Debtors live in the City of Lynchburg, Virginia.

6. The Debtors filed schedules and a statement of financial affairs along with the petition on October 15, 2024 (Docket No. 1).

7. The Debtors' Section 341 meeting of creditors was held on November 12, 2024.

8. The petition, schedules, statements and amendments to same filed by the Debtors pursuant to § 521 of the Bankruptcy Code are incorporated by reference.

9. The United States Trustee has reviewed the Schedules, Statement of Financial Affairs, amendments to same and the related documents filed by the Debtors in this case, has listened to the recording of the Section 341 meeting, has received and reviewed additional financial information from the Debtors and had conducted an interview of the Debtors.

10. On November 22, 2024, the United States Trustee filed a statement indicating that he was unable to determine whether the Debtors' case was presumed to be abusive under Section 707(b) of the Bankruptcy Code.

11. On December 13, 2024, the United States Trustee filed a statement that, after reviewing additional information, the Debtors' case was not presumed to be abusive under Section 707(b)(2) of the Bankruptcy Code. Accordingly, the United States Trustee is only asserting a claim under Section 707(b)(3) of the Bankruptcy Code.

12. The Debtors' household consists of five persons; the Debtors, their two minor children and an 18-year-old daughter.

13. While the Debtors' Schedule J only discloses the minor children, the United States Trustee understands that the 18-year-old daughter has sporadically lived with the Debtors in the past but has returned to live with them full-time post-petition.

14. According to the Debtors' Schedule I, Debtor 1 has monthly gross income of $5,200.00. He is employed as a bus driver for Liberty University and has held that job for three years.

15. According to the Debtors' Schedule I, Debtor 2 discloses monthly gross income of $5,880.05. She is an LPN at Westminster Canterbury and has held that job for thirteen years.

16. The Debtors' Schedule I discloses a total monthly gross income of $11,286.35. That is $135,436.20 on an annual basis.

17. Based on pay advices and other information that the Debtors provided to the United States Trustee, the United States Trustee believes that the Debtors' total monthly gross income disclosed on Schedule I is understated by approximately $1,000.00 per month.

18. The Debtors filed Schedule E/F along with the Petition. Schedule E/F discloses $48,087.00 in general unsecured debt. Of that, $35,778.00 is consumer debt and $12,309.00 is student loan debt.

19. On Schedule A/B filed on October 15, 2024, the Debtors disclose the ownership of six motor vehicles as follows:

    A. 2007 Toyota Camry – unencumbered;

    B. 2023 Toyota Highlander – subject to a lien in favor of Member One Federal Credit Union;

3

  C. 2020 Toyota C-HR – subject to a lien in favor of UVA Community Credit Union;

  D. 2022 Harley Davidson Roadglide Special – subject to a lien in favor of Harley Davidson Financial;

  E. 2017 Toyota Tundra – subject to a lien in favor of Lynchburg Municipal Employees Federal Credit Union;

  F. 2023 Cam Am Ryker – subject to a lien in favor of Lynchburg Municipal Employees Federal Credit Union.[2]

20. According to the Statement of Intention filed with the Petition, the Debtors intended to surrender the 2023 Toyota Highlander and the 2020 Toyota C-HR.

21. On October 24, 2024, the Debtors filed an amended Statement of Intention (Docket No. 9) indicating the Debtors' intended to surrender the 2022 Harley Davidson Roadglide, the 2017 Toyota Tundra, the 2023 Can Am Ryler, the 2023 Toyota Highlander, and the 2020 Toyota C-HR.

22. On December 12, 2024 (Docket No. 14) the Debtors filed an amended Statement of Intention indicating the Debtors' intended to surrender the the 2023 Toyota Highlander and the 2020 Toyota C-HR but retain the other vehicles.

23. The Debtors have entered into reaffirmation agreements for the 2017 Toyota Tundra (Docket No. 16) and 2023 Can Am Ryker (Docket No. 17).

---

[2] The Debtors pleadings refer to a Can Am ""Ryler." According to Cam Am's website, the actual model name is "Ryker" and it will be referred to that way herein. The Ryker is a three wheeled vehicle similar to a motorcycle but has two wheels in front and one in back.

4

24. The Debtors' amended Statement of Intention at Docket No. 14 states that they intend to enter into a reaffirmation agreement for the 2022 Harley Davidson Roadglide. As of the date of this Motion, no reaffirmation agreement regarding the Harley Davidson has been filed.

25. The United States Trustee understands that post-petition the Debtors purchased a 2006 Toyota Avalon. The United States Trustee understands that the Avalon is not subject to a lien.

26. As of the date of this Motion, the Debtors have five vehicles, as follows:

    A. 2007 Toyota Camry;

    D. 2022 Harley Davidson Roadglide Special;

    E. 2017 Toyota Tundra;

    F. 2023 Cam Am Ryker;

    G. 2006 Toyota Avalon.

27. The monthly loan payments for each of the vehicles is as follows:

    A. 2007 Toyota Camry - $0.00 (unencumbered);

    D. 2022 Harley Davidson Roadglide Special - $688.00 (Schedule J);

    E. 2017 Toyota Tundra - $677.37 (Reaffirmation Agreement at Docket No. 16);

    F. 2023 Cam Am Ryker - $286.00 (Reaffirmation Agreement at Docket No. 17);

    G. 2006 Toyota Avalon - $0.00 (unencumbered).

28. The 2022 Harley Davidson Roadglide and the 2023 Can Am Ryker are not necessary to the Debtors' support and maintenance.

29. Based on Schedule J, the monthly payment for the 2022 Harley Davidson Roadglide is $688.00.

30. Based on the Reaffirmation Agreement at Docket No. 17, the monthly payment for the 2023 Can Am Ryker is $286.00.

31. Based on information provided to the United States Trustee by the Debtors, the motor vehicle insurance for the 2022 Harley Davidson Roadglide costs approximately $75.00 per month.

32. The cost for insurance for the Can Am Ryker is unknown.

33. The Debtors also incur personal property taxes in an unknown amount for the 2022 Harley Davidson Roadglide and the 2023 Can Am Ryker.

34. The Debtors' known monthly cost for the 2022 Harley Davidson Roadglide and the 2023 Can Am Ryker is $1,049.00.

35. The payments associated with the 2022 Harley Davidson Roadglide and the 2023 Can Am Ryker are excessive and unreasonable given the Debtors' financial circumstances.

36. If the Debtors were to surrender the 2022 Harley Davidson Roadglade and the 2023 Can Am Ryker they could pay their creditors well over $30,000.00 in a chapter 13 plan over 36 months.

37. Payments totaling $30,000.00 would be a 65% return to the Debtors' unsecured creditors.

38. The Debtors' unsecured debt is primarily credit card and other consumer debt. *See In re Norris*, 225 B.R. 329, 332-33 (Bankr. E.D. Va. 1998) (if debtor "incurred cash advances and consumer purchases beyond [his or her] ability to pay" that factor weighs in favor of dismissal) (citing *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991)).

39. The Debtors are "paying for luxuries that are unreasonable in light of their financial situation . . . ." *U.S. Trustee v. Harrelson*, 323 B.R. 176, 179 (W.D. Va. 2005)). The Debtors are making monthly payments on two motorcycles, including a $688.00 per month for a 2022 Harley Davidson. The Debtors are also incurring insurance and tax obligations on the two motorcycles.

40. Based on the budget of the Debtors and their income, the Debtors could make substantial payments to their creditors whether in or out of bankruptcy by giving up expenses associated with the unnecessary and unreasonable motorcycles. *See in re Almond*, 344 B.R. 470, 480-81 (Bankr. W.D. Va. 2006) (holding ability to repay debt is the primary factor in determine substantial abuse) (citing *Harrelson*, 323 B.R. at 179-180).

41. Both Debtors are currently employed and appear to have stable employment.

42. The Debtors currently have an inaccurate Schedule I on file. The Fourth Circuit has identified "[w]hether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition" as a factor that is relevant to a determination of whether a case should be dismissed under the "totality of the circumstances" test. *See Green*, 934 F.2d at 572. Inaccurate schedules weigh in favor of dismissal "regardless of [a] [d]ebtor's motive or intent to deceive." *Almond*, 344 B.R. at 482.

43. It does not appear that the Debtors filed bankruptcy because of sudden illness, calamity, disability or unemployment. *See Almond*, 344 B.R. at 481 (holding fact that bankruptcy was not filed "because of sudden illness, calamity, disability, or unemployment" weighed in favor of dismissal).

BASIS FOR RELIEF

*Granting The Debtors A Discharge Would Be An Abuse Of Chapter 7 Of The Bankruptcy Code Pursuant to 11 U.S.C. § 707(b)(3).*

44. Section 707(b)(3) of the Bankruptcy Code states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>
> > (A) whether the debtor filed the petition in bad faith; or
> > (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

45. The totality of the circumstances of the Debtors' financial situation demonstrates that it would be an abuse of the provisions of chapter 7 of the Bankruptcy Code for the Debtors to receive a chapter 7 discharge. By way of example and not limitation, the Debtors: (i) have the ability to fund a substantial distribution to their general unsecured creditors if they were to reduce the amount of money they spend on unnecessary motor vehicles; (ii) have the ability to repay a substantial portion of the scheduled unsecured creditors' claims in a chapter 13 plan by eliminating unreasonable, excessive and/or unnecessary expenses; (iii) have stable and relatively well-paying sources of income; (iv) are engaged in excessive and unreasonable spending on motor vehicles that are not necessary to their support or maintenance; (v) currently have an inaccurate Schedule I regarding income on file; (vi) did not file this case because of any sudden illness, calamity, disability or unemployment. Viewed under the totality of the circumstances of the Debtors' financial situation, the Court should dismiss the Debtors' case unless they voluntarily convert their case to one under either chapter 11 or 13 of the Bankruptcy Code.

46. The United States Trustee reserves the right to alter or amend the allegations contained in this motion as more information becomes available.

WHEREFORE, the United States Trustee, by counsel, respectfully requests the entry of an order dismissing the Debtors' case pursuant to § 707(b)(1) of the Bankruptcy Code unless the Debtors voluntarily convert their case.

Date: January 13, 2025          Respectfully submitted,

Matthew W. Cheney, Acting United
States Trustee for Region 4

By: /s/ B. Webb King

Office of The United States Trustee
B. Webb King, Trial Attorney
VSB # 47044
210 First Street, Suite 505
Roanoke, Virginia 24011
540-857-2838
webb.king@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on January 13, 2025, I electronically filed the foregoing with the United States Bankruptcy Court for the Western District of Virginia which caused electronic notifications of filing to be served on all registered users of the CM/ECF System that have appeared in this case, including counsel for the Debtors. On this same date, I mailed a copy by first class mail to:

| | |
|---|---|
| Heidi Shafer, Esq.<br>Cox Law Group<br>900 Lakeside Drive<br>Lynchburg, Virginia 24501 | Timothy DeShawn Goode<br>2109 Giles Street<br>Lynchburg, Virginia 24504 |
| Jessica Yvette Goode<br>2109 Giles Street<br>Lynchburg, Virginia 24504 | *Intentionally left blank* |

/s/ B. Webb King

9